(No. 78-CC-0633- )

MOONEY CONSTRUCTION COMPANY, Claimant, *v*. THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, Respondent.

*Opinion filed April 7, 1986.*

MAUREEN J. MCGANN-RYAN, LTD., for Claimant.

NEIL F. HARTIGAN, Attorney General (ERIN O'CONNELL, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

On June 9, 1971, Claimant Mooney Construction Company entered into a contract with Respondent, Illinois Department of Transportation, for bridge deck repair work of some 46 miles of bridges on Route 74 in Champaign and Vermilion Counties, commonly known as contract No. 32636. There were approximately seven miles of highway on which the work was to be performed and there were several separate worksites contained within this seven-mile stretch.

In June of 1977, an agreement was reached by and between the parties under which the terms of the original contract No. 32636 were allegedly altered at the suggestion of Claimant.

Claimant seeks damages for costs incurred in the employment of extra flagmen which were ordered by Respondent in the amount of $23,289.76, plus interest.

Claimant's position is that the original contract was altered by the agreement of June 1977. The State relies on the standard specification for road and bridge construction and standard 2316-4 regarding the use of flagmen.

It is conceded that Claimant has performed all work contained in the contract and that it was satisfactory and acceptable, the only dispute being who should pay for the extra flagmen.

In the seven-mile stretch of highway on which the work was to be done, there were to be two flagmen when the lane is tapered off by barricades. One flagman is to be positioned at the beginning of the taper and one at the peak of the taper. There were approximately 25 locations along this seven-mile stretch and the dispute for this claim arose when Respondent ordered Claimant to place two flagmen at each of the locations. The evidence shows that the Department of Transportation allowed a variation to the 2316 standard which provided for traffic control at each work area by allowing the contractor to barricade a seven-mile, one-lane closure. The purpose of this variation was to provide one open stretch for the travelling public, thereby requiring only one closure instead of multiple closures. This reduced the number of flagmen required since they were only needed at one closure instead of several closures.

The record clearly indicates that at a preconstruction conference for this job, it was agreed by and between Claimant and Respondent that standard 2316-4 would be lengthened for approximately seven miles, the entire length of the project. The requirement, therefore, of separate setups of standard 2316-4 was waived by Respondent and thus only one taper was required pursuant to the agreement.

The agreement regarding the lengthening of standard 2316-4 was based upon a proposal made by Claimant. Barry Rinehart, a permit engineer with the Department of Transportation, testified that Claimant's proposal was accepted.

The issue is whether the agreed modification of standard 2316-4 also modified the definition of "work area" as it relates to the contract. Based on the testimony

of Claimant and Barry Rinehart, there is no question that the preconstruction modification to reduce several tapers to one taper, resulting in one operation or lane restriction, necessarily modified the definition of "work area." As such, the entire seven-mile stretch constituted one work area requiring only two flagmen, pursuant to standard 2316-4.

It is undisputed that Respondent required Claimant to provide additional flagmen. Article 104.03(b) provides, in part, as follows:

"Extra work which is not included in the contract as pay items at unit prices and is not included in other items of the contract shall be paid for as specified in Article 109.04."

Claimant, in the regular course of his business, sent invoices to Respondent during the year 1977 for dozens of extra flagmen which Respondent required Claimant to provide on the job site. The statements were admitted into evidence.

Based on the foregoing, the Court finds that the contract (standard 2316-4) was modified by the parties causing the entire seven-mile stretch of roadway to have one taper at the beginning and one taper at the end. As the result of this modification, the entire seven-mile stretch constituted one work area because one operation or lane restriction eliminated the necessity for separate work areas. Thus, the Court finds the extra flagmen were not required by the contract as modified and that Claimant complied with the contractual provisions regarding "extras." The Court further finds no basis in law to award interest on the amount due Claimant.

Award is hereby entered in favor of Claimant in the amount of $23,289.76, which represents the cost of

employment of the extra flagmen which the Court finds were not necessary.